**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE ESTATE OF MARK HARRIS, JR., MARK HARRIS, SR., NICOLE BETHEA and ANNETTE BETHEA; | Civil Action No. 2:14-cv-06623-SDW-SCM |
| Plaintiffs, | **OPINION** |
| v. | June 22, 2015 |
| THE CITY OF PATERSON, NEW NATIONAL SUPERMARKET, JOHN DOES 1-10, | |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendant, the City of Paterson's ("Defendant" or "City") Motion to Dismiss ("Motion") the Complaint filed by Plaintiffs, the family of the late Mark A. Harris, Jr. ("Harris" or "Decedent"), pursuant to the Federal Rule of Civil Procedure 12(b)(6). The family of the deceased Harris in this matter, includes Mark A. Harris, Sr., Annette Bethea, and Nicole Bethea (father, mother, and sister, respectively) (collectively "Plaintiffs").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rules of Civil Procedure 78.

For the reasons set forth below, this Court will **GRANT** Defendant's Motion.

**BACKGROUND AND PROCEDURAL HISTORY**

On July 14, 2013, at approximately 3:00 a.m., Harris was near the New National Supermarket when he was shot in the abdomen during a drive-by shooting. (*Id.* ¶¶ 8-9.) Approximately forty minutes after the shooting, the City of Paterson EMS ("Paterson EMS") arrived to transport Harris to the St. Joseph's Regional Medical Center. (*Id.* ¶ 10.) Harris died from his injuries at St. Joseph's Regional Medical Center on July 14, 2013. (*Id.* ¶ 11.)

On September 18, 2014, Plaintiffs filed a civil action against Defendants the City, New National Supermarket, and John Does 1-10 for wrongful death and negligence under New Jersey state law and under the Civil Rights Act 42 U.S.C. § 1983. (Compl. ¶ 1.) The Complaint includes Counts One through Six for various claims of wrongful death (and vicarious liability), Counts Seven and Eight for negligence per se and negligence/premises liability (against New National Supermarket), Count Nine for negligence (against Paterson EMS), Count Ten for violation of 42 U.S.C. § 1983 (against the City), Count Eleven for a survival action, and Count Twelve for loss of consortium/per quod claim. (*Id.* ¶¶ 27-89.)

Plaintiffs filed the initial Complaint in New Jersey state court, Superior Court Law Division, Passaic County. Defendants John Does 1-10 in this matter represent the unknown shooters. (*Id.* ¶ 12.) Neither Police surveillance cameras nor New National Supermarket's surveillance cameras were functioning at the time. (*Id.* ¶¶ 12, 13.)

Plaintiffs allege that the location where Decedent was killed has a reputation for incidents of violent crime and that neither Paterson Police nor New National Supermarket acted to protect the public from dangers they knew or should have known. (*Id.* ¶¶ 15, 19.) Additionally, Plaintiffs claim that the City does not employ an adequate number of police officers for a municipality of Paterson's size with similar rates of crime. (*Id.* ¶ 18.) Plaintiffs also allege that Paterson EMS had

a legal duty to rescue without negligence within a reasonable time to save Decedent's life. (*Id.* ¶¶ 20-21.)

On October 23, 2014, Plaintiffs filed a notice of removal to Federal Court. (Dkt. No. 1). On November 13, 2014, the City filed a Motion to Dismiss. (Dkt. No. 3). On December 4, 2014, Plaintiffs filed opposition to the Motion to Dismiss. (Dkt. No. 4). On December 17, 2014, the City filed a response to the Plaintiffs' opposition. (Dkt. No. 8). Defendant New National Supermarket did not file an answer.[1]

**LEGAL STANDARD**

In considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

---

[1] To date, New National Supermarket has not appeared in this case.

3

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (second alteration in original) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

In order for a public entity to be held liable pursuant to § 1983, a plaintiff must first demonstrate an underlying constitutional violation or injury. The Supreme Court has held that failure to protect against private violence does not violate the due process clauses. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989). To bring a successful equal protection claim, plaintiffs must demonstrate that they "received different treatment from that received by other individuals similarly situated." *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

Additionally, the language of §1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). Specifically, 42 U.S.C. §1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983; *see also Monell*, 436 U.S. at 691; *Groman v. Township of Manalapan*, 47 F.3d 628 (3d Cir. 1995); *Montgomery*, 159 F.3d at 126. Pursuant to § 1983, a plaintiff must identify a challenged policy, attribute it to a governmental entity, and show a causal link between execution of the policy and his or her alleged injury. *See Monell*, 436 U.S. at 691; *Lose v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Here, Defendant argues that Plaintiffs have not pled facts or identified a theory of liability demonstrating an "underlying constitutional violation of the Fifth or Fourteenth Amendments, or set forth a policy such that Plaintiffs could maintain a Section 1983 claim against a public entity and therefore, their claim must be dismissed." (Defs.' Br. at 7). Essentially, Defendants argue that Plaintiffs seek to hold the City liable for the criminal conduct of a third party outside of the City's control.

Plaintiffs argue that the size of the City's police force was inadequate and that the police department did not take adequate measures to protect the public given the circumstances.[2] Further, Plaintiffs claim the City is liable for the death of Decedent due to a slow or inadequate Paterson EMS response time.

Here, Plaintiffs have not alleged facts to support discriminatory or disparate treatment. *See Fowler*, 578 F.3d at 210. However, this Court reviews the Complaint in the light most favorable to Plaintiffs as it is at the Motion to Dismiss stage. The police in this matter provided adequate services and the City cannot be held liable for the allegation that Paterson EMS did not arrive in a reasonable time.

---

[2] "Article I Chapter 81-2 of the City of Paterson Municipal code limits the number of police officers that may be employed by the city to four hundred and seventy-five (475) officers." (Compl. ¶¶ 17-18.) Plaintiffs assert that "the number of police officers employed by the City of Paterson is far below the acceptable standard for a municipality of Paterson's size with similar incidents of crime." (*Id.*)

For negligence-related claims concerning emergency 9-1-1 services, the City has immunity from liability as to the timeliness of the City's EMS services or for failure to provide police protection. N.J. Stat. Ann. 59:5-4 (West); *see also* N.J. Stat. Ann. 52:17C-10 (West); *Wilson ex rel. Manzano v. City of Jersey City*, 209 N.J. 558, 563 (2012) (holding that 9-1-1 operators and their employers are immune from negligent mishandling of emergency calls as protected by the statute); *Suarez v. Dosky*, 171 N.J. Super. 1 (N.J. App. Div. 1979) (discussing the Government's power to allocate resources for the public interest). N.J.S.A. 59:5-4, provides that "neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." N.J. Stat. Ann. 59:5-4.

Plaintiffs point to a City ordinance restricting the number of police officers as creating "a dangerous condition," a "discriminatory custom where certain areas of the municipality were provided police protection, while others such as where the decedent lost his life, were left unpatrolled, with broken surveillance cameras. . ." (Pls.' Opp'n Br. 14.) However, this is not supported in the Complaint, nor is a direct causal link to the harm in this matter. Decendent lost his life due to the criminal activity of a third party, and the City, as a public municipality, is immune from liability for negligence except as discussed above. (*Id.*)

To the extent Plaintiffs allege any willful or intentional conduct by members of Paterson EMS and police, the City cannot be held liable for such conduct on the basis of vicarious liability. Generally, "'public entities are immune from tort liability unless there is a specific statutory provision imposing liability.'" *Jones v. Borough of Bogota,* No. A-0749-07T3, 2008 N.J. Super Unpub. 1748 (citing *Kahrar v. Borough of Wallington*, 171 N.J. 3, 10 (2002)); *see* N.J.S.A. 59:2-10 (public entity liability is precluded "for the acts or omissions of a public employee constituting

6

a crime, actual fraud, actual malice, or willful misconduct.") *see also Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 582 (2009); *McDonaough v. Jorda*, 214 N.J. Super 338, 349-359 (App. Div. 1986), 110 N.J. 302 (1988) (holding that where a police officer committed an assault, public entity could not be held vicariously liable) (cert. denied).

Plaintiffs' allegations of due process violations under the Fifth and Fourteenth Amendments for the City to be held liable have not been supported in these circumstances.  No custom or practice has been alleged that would apply in these tragic circumstances to impose liability.  Moreover, Plaintiffs have not provided facts to establish "an affirmative link between the [City]'s policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Monell*, 436 U.S. at 691.[3]

**CONCLUSION**

For the reasons set forth above, this Court will **GRANT** Defendant's Motion to Dismiss.

s/ Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Parties
        Steven C. Mannion, U.S.M.J.

---

[3] Plaintiffs additional survivorship and loss of consortium claims are based on the same facts and offered theory of liability, and thus, also cannot be maintained.